## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to Court approval, Sixty Vines Nashville, LLC, including its officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities (collectively, "Sixty Vines" or "Defendant"), and Jenna Pryor ("Named Plaintiff") individually, and on behalf of the Opt-In Plaintiffs and the Eligible Settlement Participants (defined below), voluntarily enter into this Settlement Agreement and Release (this "Agreement") to settle all claims and issues as set forth more fully below. Named Plaintiff, Opt-in Plaintiffs, Claimants, and Defendant will be collectively referred to as the "Parties."

## BACKGROUND AND RECITALS

1.  Named Plaintiff filed the lawsuit titled *Jenna Pryor, On Behalf of Herself and All Others Similarly Situated v. Sixty Vines Nashville, LLC d/b/a Sixty Vines*, No. 3:23-cv-00674 (M.D. Tenn.) on July 7, 2023 ("the Action"). In the Action, Named Plaintiff asserts claims against Defendant on behalf of herself and others allegedly similarly situated under the Fair Labor Standards Act of 1938 (the "FLSA").

2.  Defendant denies all claims asserted in the Action.

3.  As of the date of this agreement, ten (10) Opt-In Plaintiffs have submitted Consent to Join forms, which have been filed with the Court.

4.  To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in mediation.

5.  The Parties mediated this case with experienced wage-and-hour class and collective action mediator Michael Russell on November 17, 2023. Although that session did not result in a

resolution, Mr. Russell concluded the session by making a mediator's proposal, which both parties had agreed to as of November 21, 2023. The terms of that agreement are embodied herein.

6.      The purpose of this Agreement is to fully and finally settle all Released Claims (as defined below) that Named Plaintiff, Opt-In Plaintiffs, and any Claimants (as defined below) may have against Defendant.

## DEFINITIONS

7.      "Approval Order" means the Court's Order approving this Settlement.

8.      "Claimant" means Named Plaintiff, Opt-In Plaintiffs, and each Eligible Settlement Participant who completes, signs, and submits a valid and timely Claim Form. Named Plaintiff and the Opt-In Plaintiffs are not required to submit a Claim Form to receive their Settlement Award checks or any other payment under this Agreement.

9.      "Claim Form" means the form approved by the Parties' Counsel, and subject to Court approval, that each Eligible Settlement Participant, except for Named Plaintiff and the Opt-In Plaintiffs, must sign, complete in full, and timely submit within **sixty (60) days** following mailing of the Notice of Settlement to recover a Settlement Award. A copy of the Claim Form is attached as **Exhibit A.**

10.     "Court" means the United States District Court for the Middle District of Tennessee.

11.     "Covered Period" refers to the period from July 7, 2020, to November 17, 2023

12.     "Defendant's Counsel" means Jonathan O. Harris and Ashton P. Hoffman of Jackson Lewis P.C.

13.     "Effective Date" is defined as the date the Court grants final approval of the Parties' settlement.

14.     "Eligible Settlement Participants" means: All current and former employees of Sixty Vines Nashville, LLC who received below minimum wage and for whom Sixty Vines took the tip credit from July 7, 2020, to November 17, 2023 at the Sixty Vines Nashville restaurant. Eligible Settlement Participants include Named Plaintiff and the Opt-In Plaintiffs. Sixty Vines's counsel will submit the list of "Eligible Settlement Participants" to the Plaintiff's Counsel, along with detailed time and pay data for each Eligible Settlement Participant.

15.     "Global Settlement Fund" means the gross settlement amount of **$375,000.00**. The Global Settlement Fund is the sole and maximum payment by the Defendant and includes (1) all Settlement Awards (defined below); (2) any Service Payment approved for Named Plaintiff; and (3) all Plaintiffs' Counsel's attorneys' fees and litigation expenses approved by the Court. In addition, Defendant will make all required employer contributions with respect to any portions of the Settlement Awards and the Service Payment treated as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions are not included within the Global Settlement Fund.

16.     "Net Settlement Fund" means the amount available for individual Settlement Award, after deducting Plaintiffs' Counsel's attorneys' fees and litigation expenses, any taxes associated with the Net Settlement Fund, any expenses associated with the Net Settlement Expenses, and the Service Award.

17.     "Notice of Settlement" means the form approved by the Parties' Counsel, and subject to Court approval, that will be sent to each Eligible Settlement Participant which will

explain this Settlement, the claims process and explains the formula for the allocation of the Net Settlement Fund. A copy of the Notice of Settlement is attached as **Exhibit B.**

18.　　"Opt-In Plaintiffs" means the individuals who, as of the date of this Agreement, have submitted Consent to Join forms, which have been filed with the Court.　A list of Opt-In Plaintiffs is attached as **Exhibit C**.

19.　　"Plaintiffs' Counsel" means Chase Teeples of Yezbak Law Offices PLLC and David Garrison of Barrett Johnston Martin & Garrison, PLLC.

20.　　"Released Claims" means, upon the Effective Date, the Named Plaintiff, Opt-In Plaintiffs, and the Claimants will release, and forever discharge, Released Parties, from any and all federal, state or local wage and hour claims including claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising during the period of July 7, 2020 through the Effective Date, that were, or could have been, asserted under the FLSA or any applicable state wage and hour laws relating to unpaid and/or untimely payment of minimum wage or overtime compensation, including any claims for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, and Service Awards.

21.　　"Released Parties" means Defendant and any of its officers, directors, shareholders, managers, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities.

22.　　"Settlement" means the Parties' resolution of the Action as to Named Plaintiff and the Claimants.

23.　　"Settlement Award" means the amount of the Net Settlement Fund that will be paid to each Eligible Settlement Participant who becomes a Claimant, which shall be his or her *pro*

*rata* share of the Net Settlement Fund based on the amount of allegedly unpaid wages owed to the Eligible Settlement Participant as calculated by Plaintiffs' Counsel for the Covered Period.

24.     "Unclaimed Funds" means the amount of the Net Settlement Fund remaining after the "Opt-In Deadline" has passed.  Defendant retains unclaimed funds.

25.     "Service Award" means a payment made from the Global Settlement Fund in the amount of $5,000 each to Named Plaintiff and to Opt-In Plaintiffs Kamryn Smith and Reagan Hughes for their services in bringing and prosecuting the Action, and in consideration for their general releases of claims below.

<u>**DENIAL OF LIABILITY**</u>

26.     Defendant denies liability or wrongdoing of any kind associated with the claims alleged in the Action.  Consequently, this Agreement is a compromise, and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendant or the Released Parties, for any purpose, and under any circumstance.  This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.  The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

27.     For purposes of this Settlement only, the Parties agree that Named Plaintiff, the Opt-In Plaintiffs, and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA.  Specifically, Named Plaintiff alleges in the Action that she and the Opt-In

Plaintiffs and Eligible Settlement Participants were all subject to Defendant's alleged single FLSA-violating policies of requiring tipped workers to perform excessive non-tipped tasks, including certain improper employees in a tip pooling arrangement, requiring employees to purchase certain clothing and equipment, and requiring employees to perform work off-the-clock. In addition, Named Plaintiff, Opt-In Plaintiffs, and the Eligible Settlement Participants all worked in tipped positions. Moreover, they were all subject to Defendant's uniform timekeeping and compensation policies.

28. The Parties agree to toll the statute of limitations for all Eligible Settlement Participants from November 21, 2023, until dismissal of the Action with prejudice or a Court order denying settlement approval with prejudice, whichever is later.

## DUTIES OF THE PARTIES TO COOPERATE TO OBTAIN COURT APPROVAL OF THE SETTLEMENT

29. The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts ordered by the Court, to accomplish the terms of this Settlement, including but not limited to, executing such documents and taking such other actions as may reasonably be necessary to obtain approval of this Settlement without material modifications and to implement its terms.

## ATTORNEYS' FEES AND COSTS

30. Defendant agrees to pay to Plaintiffs' Counsel their fees for services and their litigation expenses, not to exceed **one-hundred and thirty-five thousand dollars ($135,000),** of the Global Settlement Fund, subject to Court approval. If the Court does not approve this settlement, then no fees shall be paid. Defendant will not contest Plaintiffs' position with respect to fees or their representations to the Court with respect to fees in the course of Settlement

Approval. Any attorneys' fees and litigation expenses approved by the Court will be paid from the Global Settlement Fund. Defendant will wire Plaintiffs' Counsel's Court-approved attorneys' fees and litigation expenses **thirty (30) days** after the Effective Date. Any attorneys' fees and litigation expenses not approved by the Court will be redistributed *pro rata* to Named Plaintiff, Opt-In Plaintiffs, and Claimants.

## SERVICE AWARD

31.     Defendant agrees to pay Service Awards to the Named Plaintiff, Opt-In Kamryn Smith, and Opt-In Reagan Hughes in the amount of five thousand dollars ($5,000) each, subject to Court approval. Defendant will not contest Court approval of these agreed-upon service payments. These payments are made in consideration for the additional general release (set forth below) executed by Named Plaintiff, Opt-In Kamryn Smith, and Opt-In Reagan Hughes. The Service Award approved by the Court will be paid from the Global Settlement Fund. For tax purposes, the Parties agree the Service Awards will be taxable, non-wage income paid under IRS Form 1099, checking box 3 for "other income." Defendant will mail checks for the Court-approved Service Awards to the Plaintiffs' Counsel **thirty (30) days** after the Effective Date. Any Service Award not approved by the Court will be redistributed *pro rata* to Named Plaintiff, Opt-In Plaintiffs, and Claimants. The Court's approval or non-approval of any amount of Service Award shall in no way affect the binding validity of the remainder of this Agreement.

## PLAINTIFFS' DUTIES AND RESPONSIBILITIES

32.     The Plaintiff agrees to perform the following duties and responsibilities in good faith and in accordance with the requirements and deadlines:

a.      Preparing and disseminating the Notice of Settlement to all Eligible Settlement Participants;

b.      Processing and maintaining a record of all Eligible Settlement Participants that opt-in to the Settlement and reporting same to the Defendant's Counsel;

c.      Timely responding to inquiries of the Defendant or their Counsel;

d.      Distributing Settlement Award checks to all Claimants;

e.      Redistributing Settlement Award checks to Claimants who do not receive or who misplace their Settlement Award checks;

f.      Distributing reminder postcards to Claimants who have not cashed their Settlement Award checks **sixty (60) days** before the check void date;

g.      Promptly filing claim forms with the Court;

h.      Within **five (5) days** of receiving the Attorney's Fees and Costs, Plaintiffs' Counsel shall provide Defendant with an IRS Form W-9 for Plaintiffs' Counsel.

i.      Apprising Defendant's Counsel of all material requests, inquiries, or communications by Eligible Settlement Participants who receive the Notice of Settlement that require action by Defendant or Defendant's Counsel;

j.      Maintaining adequate records of Plaintiffs' Counsel's activities, including the date of the mailing of the Notices of Settlement, receipt of Claim Forms, and other communications and attempted communications with Eligible Settlement Participants;

k.      Confirming, in writing to the Defendant's Counsel its completion of the administration of this Settlement and retaining copies of all endorsed Settlement

checks; and such other tasks as customarily and regularly performed in administering a settlement and as the Parties mutually agree.

## **SETTLEMENT TIMELINE**

33.     On or before January 24, 2024, Named Plaintiff shall file an unopposed motion seeking Court authorization to send notice of the settlement to the Eligible Settlement Participants ("Notice Motion"), including agreed notices and Claim Forms. The agreed notices shall advise the Eligible Settlement Participants of the material terms and provisions of this settlement, the procedure for submitting Claim Forms, and their rights with respect to this settlement. The Settling Parties shall also submit an agreed Proposed Order with the Notice Motion.

34.     Within **fourteen (14) days** of the Court's order granting the Notice Motion, Defendant shall provide the Plaintiffs' Counsel with an Excel spreadsheet listing the names, employee identification numbers, last-known mailing addresses, last-known email addresses, and last-known phone numbers for the Eligible Settlement Participants during the Covered Period, as that information exists in Defendant's records. Plaintiffs' counsel will use the information provided by Defendant to make reasonable efforts to obtain accurate contact and mailing information for Eligible Settlement Participants. In the event Plaintiffs' Counsel is unable to obtain accurate mailing information for any Eligible Settlement Participant, Plaintiffs' Counsel shall provide the name of that eligible settlement participant, and attempts made to locate that participant. Assuming the Parties agree, in good faith, that reasonable attempts have been exhausted, Defendant will make reasonable attempts using the employee's Social Security Number to locate the employee.

35.     Within **thirty (30) days** of the Court's order granting the Notice Motion, Plaintiffs' Counsel will distribute notice to the Eligible Settlement Participants via email, SMS text message, and U.S. Mail accompanied by a postage-paid return envelope (the "Notice Date"). Claimants will return completed Claim Forms to Plaintiffs' Counsel electronically or by any other reasonable means. If any Notice of Settlement is returned as undeliverable, Plaintiffs' Counsel will promptly attempt to locate such Eligible Settlement Participant through other reasonable and legally acceptable means, and, if located, shall promptly distribute an additional notice to such person.

36.     Each Eligible Settlement Participant shall have **sixty (60) days** from the Notice Date to submit his or her signed and completed Claim Form to Plaintiffs' Counsel, and any such submission must be received by Plaintiffs' Counsel on, or before, the sixtieth (60th) day from Notice Date (the "Opt-In Deadline"). Named Plaintiff and the Opt-In Plaintiffs are not required to submit Claim Forms to receive their Settlement Award checks or any other payment under this Agreement.

37.     Plaintiffs' Counsel shall distribute notice to the Eligible Settlement Participants consistent with the terms of the Court's order authorizing notice.

38.     Plaintiffs' Counsel will inform Defendant's Counsel of any current or former employees similarly situated to Named Plaintiff but who did not receive the Notice and who contact Plaintiffs' Counsel about being eligible to participate in the Settlement. If the Parties' Counsel agree that any additional individuals are eligible to participate after conferring in good faith, then Defendant's Counsel will provide Plaintiffs' counsel with the time and pay data necessary to calculate the payments owed to those individuals. Such payments will be treated like the payments to other Claimants and come from unclaimed funds. If unclaimed funds are

insufficient to make the required payments to the excluded individuals, then Defendant will pay additional monies to the excluded individuals, without regard to whether those payments exceed the amount of the Global Settlement Fund. If the Parties' Counsel cannot resolve any dispute over whether to include excluded individuals in the Settlement, then they shall promptly bring such disputes to Michael Russell for resolution.

39.     Plaintiffs' Counsel will regularly file Claims Forms received from Claimants with the Court, and such filings shall occur at least once per week.

40.     Within **five (5)** days of the Opt-in Deadline, Plaintiffs' Counsel will prepare and send to Defense Counsel a "Final Opt-in List" containing the names of the Eligible Settlement Participants who submit Claim Forms and become Claimants. The Final Opt-in List shall also contain Plaintiffs' calculation of settlement shares attributable to each Claimants.

41.     Within **fourteen (14)** days of the Opt-in Deadline, Plaintiffs' Counsel shall file an unopposed Motion for Final Settlement Approval, outlining the events of the notice process and including the Final Opt-In List as an exhibit as well as an order for Final Approval.

42.     Within **twenty-one (21) days** of the Court's order granting final approval of the Settlement ("Final Approval Order"), Defendant shall forward both W-2 checks, less applicable withholding, and 1099 checks for each Claimant to Plaintiffs' Counsel for dissemination to Claimants.

43.     Within **twenty-one (21) days** of the Final Approval Order, Defendant's Counsel shall wire the Plaintiffs' Counsel's Court-approved attorneys' fees and litigation expenses to the Plaintiffs' Counsel as described in Section 30.

44.     Within **thirty (30) days** of the Final Approval Order, Defendant will mail checks for the Court-approved Service Awards to Plaintiffs' Counsel as described in Section 31.

45.     Plaintiffs' Counsel shall mail reminder postcards to Claimants who have not cashed their Settlement Award checks **sixty (60) days** before the check void date.

## GLOBAL SETTLEMENT FUND AND TAXES

46.     The Parties recognize the wage and non-wage awards to the Claimants will be subject to applicable tax withholding and reporting and employer payroll taxes.  Defendant is responsible for calculating and paying the employer's share of payroll taxes related to Settlement Award payments treated as wage income, which shall not be deducted from W-2 portion of the Settlement Award. The Claimants' portion of payroll taxes shall be deducted from W-2 portion of each Claimants' Settlement Award.

47.     Plaintiffs' Counsel shall be responsible for paying any and all taxes due on sums they receive under this Agreement and as approved by the Court.

## TAX TREATMENT OF THE SETTLEMENT AWARDS

48.     For tax purposes, the Parties agree Settlement Awards will be: (a) 50 percent taxable, wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings under federal and state law; and (b) 50 percent taxable, non-wage income paid under IRS Form 1099, checking box 3 for other income.  Defendant will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund.

49.     All Settlement Award checks that are not negotiated by a Claimant within **one-hundred eighty (180) days** of the of date issuance or reissuance, as noted on the Settlement Award

checks mailed by the Plaintiffs to the Claimants, shall be null and void; the associated funds shall not be redistributed among the Claimants, except as expressly provided for herein; any such funds shall belong to Defendant; and this Agreement shall remain binding on all the Claimants who cash their checks.

## CALCULATION OF SETTLEMENT AWARDS

50.     Plaintiffs' Counsel is responsible for performing Settlement Award calculations.

51.     Defendant will provide to Plaintiffs' Counsel detailed time and pay data for all Eligible Settlement Participants on for before January 29, 2024, so that Plaintiffs' Counsel may calculate the estimated payment available to each Eligible Settlement Participant and provide those estimates to the Court with the approval motion.

52.     Settlement Awards shall be calculated for each Claimant following the below formula: (1) a minimum payment of $50 for each Eligible Settlement Participant; and (2) each Eligible Settlement Participant's *pro rata* share of the Net Settlement Fund based on Plaintiffs' Counsel's calculation of the maximum damages that any Eligible Settlement Participant could have recovered in the Action.

## RELEASE OF CLAIMS BY THE NAMED PLAINTIFF, SERVICE AWARD PLAINTIFFS AND CLAIMANTS

53.     Following Court approval of their Service Awards and cashing of their Service Award checks, Named Plaintiff, Opt-in Kamryn Smith, and Opt-In Reagan Hughes, on behalf of themselves and their heirs and assigns, hereby forever release and discharge, through the date of execution of this Agreement, the Released Parties from any and all claims, obligations, causes of action, actions, losses, expenses, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the

date that the Court enters the Approval Order, including but not limited to those claims which: (a) were pled in the Action at any time; and/or (b) could have been pled in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to pay any type of minimum wages, (iii) alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.), (iv) any other alleged federal wage-and-hour violation, (v) any other alleged state wage-and-hour violation; (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, and (vii) any statutory, constitutional, regulatory, contractual or common law employment-related claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, liquidated damages, punitive damages, attorneys' fees and expenses, litigation costs, restitution, and equitable relief ("Service Award Plaintiffs' Released Claims"). For the avoidance of doubt, this is a complete and general release of all possible claims to the maximum extent allowed under the law. Service Award Plaintiffs' Released Claims do not include any workers' compensation claims, claims for unemployment benefits, or claims that cannot be released by law.

54.     In consideration for their Service Awards, assuming the Court approves the same and the checks are cashed, Named Plaintiff, Opt-In Plaintiffs and each Claimant forever and fully releases the Released Parties from the "Service Award Plaintiffs' Released Claims." Approval of the requested Service Awards is a condition precedent for this general release; in the event the Service Awards are not approved, this general release is null and void and without effect.

55.     Further, in consideration for the payment of their attorneys' fees and costs, Named Plaintiff, the Opt-In Plaintiffs, and Claimants hereby releases all claims, causes of action, demands,

damages, costs, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses under the FLSA against the Released Parties arising from or related to the Action, including in relation to any inquiry, research and settlement discussions they conducted and the Complaint.

56.     Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees to dismiss the Litigation with prejudice. In order to receive a settlement payment, all Claimants agree to execute a Consent to Join and Release Form, which shall release the Released Parties from: any and all federal, local and state wage and hour claims that accrued, or may have accrued, during their employment, relating back to the full extent of all applicable local, state, and federal statutes of limitation and continuing through November 21, 2023, including, without limitations, all local, state, and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

## **NOTICES**

57.     All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered by email or mail to the Counsel listed below:

**Plaintiffs' Counsel: Chase Teeples at teeples@yezbaklaw.com**

**Counsel for Defendant: Jonathan Harris at Jonathan.Harris@jacksonlewis.com**

## **CONSTRUCTION, INTERPRETATION AND MODIFICATION**

58.     This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement, and it shall supersede all prior and

contemporaneous negotiations between the parties. This Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement, or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

59.     If any provision of this agreement is found to be deficient by the Court, the parties agree to work cooperatively and in good faith to address any identified deficiencies within 14 days of the Court's order.

60.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

61.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

62.     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Tennessee, and shall be subject to the continuing jurisdiction of the Court. The Parties agree that if either Party breaches any of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred in enforcing the terms and conditions contained herein.

63.     If any provision of this Agreement, except the payments to be made hereunder and the Release, which are material terms, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable the remaining portions of this Agreement will remain in full force and effect to the extent the effect of this Agreement, as well as the obligations of the Parties, remains materially the same.

64.     This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel, and as approved by the Court.  This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement.  All counterparts of any such document together shall constitute one and the same instrument.  A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

65.     This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit the Released Parties; likewise, this Agreement shall be binding upon the Named Plaintiff's and the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

## CONTINUING JURISDICTION

66.     The Parties agree to move for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

WHEREFORE, having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

| DATED: | DEFENDANT<br><br>By: _____<br><br><br>Its: _____ |

| DATED:<br><br>01/24/2024 | NAMED PLAINTIFF<br><br>_____ |

| DATED:<br><br>01/24/2024 | KAMRYN SMITH<br><br>_____ |

| DATED:<br><br>01/24/2024 | REAGAN HUGHES<br><br>_____ |

Page **18** of **18**

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

| DATED: | DEFENDANT<br><br>By: _____<br><br>Its: _____CEO_____ |
|---|---|

| DATED: | NAMED PLAINTIFF<br><br><br>_____ |
|---|---|

| DATED: | KAMRYN SMITH<br><br><br>_____ |
|---|---|

| DATED: | REAGAN HUGHES<br><br><br>_____ |
|---|---|